**Reformed and Affirmed and Opinion Filed March 15, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-20-00453-CR

**JOSHUA ALEXANDER JAMES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1420189-R**

## MEMORANDUM OPINION

Before Justices Molberg, Nowell, and Goldstein
Opinion by Justice Molberg

Appellant Joshua James appeals his conviction for assault family violence impeding breath/circulation for which he was sentenced to four years' confinement after the trial court adjudicated his guilt and revoked his community supervision. In three issues, appellant challenges the trial court's order revoking his deferred adjudication community supervision, arguing that insufficient evidence supported the trial court finding true the State's allegations that he violated three conditions of community supervision. In his fourth issue, appellant argues most of the "time payment fee" assessed here is unconstitutional. We conclude sufficient evidence supported at least one of the trial court's bases for adjudicating appellant guilty and

revoking his community supervision and find that the time payment fee was prematurely assessed. We therefore affirm the judgment as modified below in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## I. Background

Appellant pleaded guilty to assault family violence impeding breath/circulation on December 10, 2014, pursuant to a plea bargain agreement with the State, according to which he would be placed on deferred adjudication community supervision for four years. He was ordered by the trial court to comply with twenty conditions of supervision. As pertinent here, appellant was ordered to "notify the Supervision Officer not less than twenty-four hours prior to any changes in your home or employment address"; "[f]irst contact to the Volunteer Center must be made by the defendant within 30 days from referral and defendant is to start 160 hours of community service at an approved Community Service Project or projects designated by the Community Supervision and Corrections Department"; and "[w]ithin 30 days from referral, participate[] in a domestic violence treatment program (BIPP)[1] through a court-approved resource, making an observable, deliberate and diligent effort to comply with all directives provided by the Program until released successfully by the agency of the Court."

---

[1] "BIPP" stands for Batterer's Intervention and Prevention Program. *See Ex parte Obi*, 446 S.W.3d 590, 594 n.3 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

During appellant's time on probation, the State filed several motions to proceed with an adjudication of guilt, beginning in 2015. Each motion alleged, among other things, that appellant had failed to "participate in a domestic violence treatment program (BIPP) through a court-approved resource" or that he "did violate condition (p) in that [he] did not complete BIPP." Each time, appellant's probation was continued, sometimes with modified conditions, including jail time.

The State filed the amended motion to proceed with adjudication of guilt at issue here on December 18, 2019. The State alleged, in pertinent part, that appellant "failed to notify the Community Supervision Officer of his change of address/employment within 24 hours"; "failed to complete Community Service hours as directed"; and "failed to participate in a Domestic Violence Treatment program (BIPP) through a court-approved resource."

At the hearing on the motion to proceed with an adjudication of guilt, appellant pleaded not true to the State's allegations. The State called Kecia Mitchell, a probation officer with Dallas County, who testified that she first began supervising appellant in 2016. She said generally that appellant "didn't complete anything"; "had a problem reporting as scheduled"; "didn't complete BIPP"; and "didn't complete anything, any of his conditions."

Regarding BIPP in particular, she testified as follows:

Q. And so he also was supposed to complete BIPP, correct?

A. Yes.

–3–

Q. And he -- he never did that, correct?

A. No. He never –

Q. How did you know he was supposed to do BIPP?

A. He was given several referrals and it's on his conditions of his probation.

Q. Okay. So did you -- did you talk to him personally about having to complete BIPP?

A. Yes.

More specifically, she said that appellant "enrolled in BIPP twice" but "just never went to any sessions."

According to Mitchell, appellant told her that the first provider to which he was referred—The Family Place in northeast Dallas—was inconvenient. Appellant was given a final August 30, 2019 deadline to enroll at the Family Place. Mitchell said he did not enroll until September. When Mitchell then referred him to a provider closer to where he lived, "he enrolled, but then he was arrested" and missed the deadline. During his five years of probation, Mitchell said, appellant did not complete BIPP. Though appellant told Mitchell he was attending, she inquired and determined "he hadn't attended any classes" and "eventually he was discharged."

On cross-examination, Mitchell further testified:

Q. Okay. So you've given him another referral. Did he, in fact, enroll there?

A. Yes.

Q. So it went through an orientation and enrolled, whatever that process is?

A. Yes.

Q. Paid money in order to enroll; is that correct?

A. I'm assuming he paid the money.

Q. Okay. As far as your notes go, does it indicate that he showed you any -- any proof of actually attending the classes?

A. No. I actually -- I called them and asked if he was attending. And I think he attended one before he was arrested on a probation violation.

She testified that, prior to going to jail, appellant had missed two classes, and if he "misse[d] any more, then he was going to be discharged."

When questioned about his failure to notify her about any changes in his address, Mitchell said: "[I]t was a while back. I think he was living in some apartments. He moved frequently. . . . [T]he last time he was living in some apartments, that was in 2016 and the field officer was having a hard time contacting him there." And regarding community service hours, Mitchell testified that appellant was aware he was supposed to complete them. She stated that he did not complete them.

Appellant testified he understood his conditions of probation. He testified he was incarcerated prior to June 2019, and he was "doing BIPP in Dallas County custody." When he was released, he said he made attempts to get credit for those classes. He also said he made the August 30, 2019 deadline to enroll at The Family

–5–

Place; he testified that he enrolled August 28. But "it was an inconvenience because it was all the way in north Dallas and I lived in Duncanville at the time with no car . . . ." Appellant further said The Family Place "kept rescheduling" him. So, appellant said, he ended up at another provider located on Martin Luther King, Jr. Blvd. in south Dallas. But he had transportation issues there, too. Appellant testified, finally, he enrolled with the provider called Lankford Avenue, where he said he completed three classes.

Appellant admitted two exhibits relating to the BIPP requirement. The first was a letter of enrollment from Lankford Avenue. It reflected that appellant's date of enrollment and orientation was November 6, 2019, and the estimated date of first class was November 9, 2019. Included with the letter was a receipt indicating appellant made a $40 payment for "intake" and "workbook" on November 6. The second exhibit was another receipt, dated November 16, 2019, indicating a $20.00 payment for a class at Lankford Avenue.

The trial court found appellant violated the three conditions at issue and adjudicated him guilty.[2] The court sentenced appellant to four years' confinement and made "an affirmative finding of family violence."

---

[2] The State abandoned four allegations, and the trial court found four other allegations not true.

## II.     Standard of review

We review a trial court's order revoking probation for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). "In determining questions regarding sufficiency of the evidence in probation revocation cases, the burden of proof is by a preponderance of the evidence." *Id*. This standard applies "whether it be regular probation" or, as here, deferred adjudication. *Hacker v. State*, 389 S.W.3d 860, 864 (Tex. Crim. App. 2013). Thus, to support an order revoking probation, the "greater weight of the credible evidence" must "create a reasonable belief that the defendant has violated a condition of his probation." *Rickels*, 202 S.W.3d at 763–64. The trial judge is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Hacker*, 389 S.W.3d at 864.

## III.     Analysis

We conclude sufficient evidence showed appellant violated the condition of probation requiring him to participate "in a domestic violence treatment program (BIPP) through a court-approved resource, making an observable, deliberate and diligent effort to comply with all directives provided by the Program until released successfully by the agency of the Court." Because we so conclude, we do not reach or discuss the other two conditions the trial court found true. *Moses v. State*, 590 S.W.2d 469, 470 (Tex. Crim. App. [Panel Op.] 1979) ("Proof of any one of the alleged violations is sufficient to support the order revoking probation.").

The evidence shows appellant was placed on deferred adjudication community supervision at the end of 2014. There is no evidence appellant attended any court-approved BIPP classes until the end of 2019, when the State was already moving again to revoke appellant's community supervision based on his failure to satisfy this condition. Mitchell testified that, though being arrested stopped appellant from continuing at Lankford Avenue, she determined that he had already missed two classes prior to being arrested. While appellant testified that he attended BIPP classes in jail, there is no evidence beyond his testimony that the classes he attended were the "court-approved resources" referred to in the community supervision order. And the trial court was the sole judge of the witnesses' credibility and the weight to be given their testimony. *Hacker*, 389 S.W.3d at 864. Appellant argues he "did not wholly neglect his BIPP obligations" and that he "took steps to complete the program." But we cannot agree the trial court erred by finding that appellant's late effort was not the participation required by its order. Further, appellant was not ordered merely to participate in the program but to make "an observable, deliberate and diligent effort to comply with all directives provided by the Program[.]"

Given all of that, we conclude the trial court could have found that the greater weight of the evidence created a reasonable belief that appellant failed to "[participate] in a domestic violence treatment program (BIPP) through a court-approved resource, making an observable, deliberate and diligent effort to comply

with all directives provided by the Program until released successfully by the agency of the Court." Accordingly, we conclude the trial court did not abuse its discretion by proceeding to an adjudication of guilt and revoking appellant's community supervision. Appellant's third issue is overruled; consequently, we need not decide his first two issues. *See, e.g.*, *Overloon v. State*, No. 05-20-00249-CR, 2021 WL 4704813, at *1 (Tex. App.—Dallas Oct. 8, 2021, no pet.) (mem. op., not designated for publication).

## IV. Time payment fee

In his fourth issue, appellant argues the "time payment fee" imposed pursuant to TEX. LOC. GOV'T CODE § 133.103[3] is unconstitutional. He relies on this Court's decision in *Ovalle v. State*, 592 S.W.3d 615, 618 (Tex. App.—Dallas 2020), *vacated*, No. PD-0127-20, 2021 WL 1938672 (Tex. Crim. App. May 12, 2021).

Here, the trial court's March 26, 2020 judgment adjudicating guilt reflected $599 owed in court costs. According to the fee docket sheet in the clerk's record, a $25.00 fee (labelled "installment plan") accrued on January 10, 2015—thirty-one days after the other $574 in costs accrued. The parties agree that this is a "time payment fee" assessed under section 133.103.

---

[3] "A person convicted of an offense shall pay, in addition to all other costs, a fee of $25 if the person: (1) has been convicted of a felony or misdemeanor; and (2) pays any part of a fine, court costs, or restitution on or after the 31st day after the date on which a judgment is entered assessing the fine, court costs, or restitution."

While this appeal was pending, the court of criminal appeals decided *Dulin v. State*, 620 S.W.3d 129, 133 (Tex. Crim. App. 2021), where it held that "[t]he pendency of an appeal stops the clock for purposes of the time payment fee." Applying *Dulin* here, we conclude that the $25 time payment fee was prematurely assessed because appellant's notice of appeal—which was filed less than thirty days after the March 26, 2020 judgment—stopped the thirty-one day clock in section 133.103. *See id.* The $25 fee should therefore be struck, without prejudice to it being assessed later if, more than thirty days after the issuance of the appellate mandate, the defendant has failed to completely pay any fine, court costs, or restitution that he owes. *See id.* We also note that, to the extent the time payment fee was assessed thirty-one days after appellant was placed on deferred probation in 2014, it was prematurely assessed then, too, because an order of deferred adjudication is not a "judgment." *See Turner v. State*, No. 05-19-01493-CR, 2021 WL 3083501, at *2 (Tex. App.—Dallas July 21, 2021, no pet.) (mem. op., not designated for publication) ("an order of deferred adjudication is not a 'judgment,'" and thus "time payment fee was prematurely assessed" a month after order of deferred adjudication was entered); TEX. LOC. GOV'T § 133.103 (time payment fee is owed only if defendant "pays any part of a fine, court costs, or restitution on or after the 31st day after the date on which a *judgment* is entered assessing the fine, court costs, or restitution" (emphasis added)).

Accordingly, we modify the trial court's judgment to reduce the total amount of court costs by $25. *See* TEX. R. APP. P. 43.2(b) (appellate court may "modify the trial court's judgment and affirm it as modified").

## V.     Conclusion

We affirm the trial court's judgment as modified.

/Ken Molberg/
KEN MOLBERG
JUSTICE

200453f.u05
DO NOT PUBLISH
Tex. R. App. P. 47



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JOSHUA ALEXANDER JAMES,
Appellant

No. 05-20-00453-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1420189-R.
Opinion delivered by Justice
Molberg. Justices Nowell and
Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

> We modify the trial court's judgment to reduce the total amount of court costs by $25 to strike the time payment fee, without prejudice to them being assessed later if, more than 30 days after the issuance of the appellate mandate, the defendant has failed to completely pay any fine, court costs, or restitution that he owes.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 15th day of March, 2022.